UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

GUARLD CLINE,

                Defendant.
_____

REPORT & RECOMMENDATION

04-CR-6068L

        Currently pending before this Court is the government's motion to commit the defendant, Guarld D. Cline ("Cline"), to the custody of the Attorney General for evaluation and treatment pursuant to 18 U.S.C. § 4241(d)(1). (Docket # 70).

        On March 28, 2006, counsel for Cline filed a motion pursuant to 18 U.S.C. § 4241 for a hearing to determine Cline's mental competency. (Docket # 47). The motion was based upon the fact that Cline suffers from multiple medical problems, including neurological ones, for which he is prescribed numerous medications (twenty-two at the time of the motion), the adverse effects of some of which are confusion, anxiety, concentration difficulties and mood changes. The government did not oppose the motion.

        By order dated May 17, 2006, this Court granted Cline's motion for a hearing and ordered, pursuant to 18 U.S.C. § 4241(b), that Cline be examined by a forensic psychiatrist to determine whether he is presently suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. (Docket # 50). Cline was thereafter examined by Gary J. Horwitz, M.D., a

forensic psychiatrist. The results of his examination are contained in two written reports, the first dated August 9, 2006 and the second dated February 5, 2007. (Docket # 77).

The first report recommended that additional neuropsychological and medical tests be conducted. Additional testing was conducted in December 2006 and January 2007. Following those tests, Dr. Horwitz issued his second report. That report contained Dr. Horwitz's opinion that "Cline currently lacks competence to proceed to trial." (Docket # 77). According to the report, Dr. Horwitz was unable to determine "what component of [Cline's] impairment is reversible," noting that "[t]he degree to which medications may be playing a role can only be sorted out with a high level of medical monitoring while he is taken off various medications to see if his condition improves." (*Id.*).

On February 27, 2007, Cline, his counsel and government counsel appeared at a proceeding before this Court. Cline, through counsel, accepted the reports of Dr. Horwitz and waived a hearing. Government counsel likewise accepted the report and requested no hearing. This Court indicated its intent to issue a Report and Recommendation to United States District Judge David G. Larimer to accept the report, credit Dr. Horwitz's opinion that Cline presently lacks competence to proceed to trial and to commit Cline to the custody of the Attorney General for further evaluation and treatment, pursuant to 18 U.S.C. § 4241(d). (Docket # 60).

Before the Report and Recommendation was issued, however, defense counsel submitted a letter to this Court raising concerns about the plan to commit Cline for hospitalization by the Attorney General. (Docket # 78). With the government's consent, this Court agreed to Cline's request to be treated out of custody by his own physicians to explore whether any modifications could be made to his medication regimen to restore his competence.

2

(Docket ## 62, 63). It was further agreed that Cline's neurologist, Dr. Robert Knapp, would coordinate the evaluation and treatment and report his conclusions to the Court. (Docket # 63).

After approximately nine months, Dr. Knapp issued a report in which he opined, "[f]or the medical record, while I believe that this patient is improving concerning his depression and headache activity, his cognitive impairment is not likely to further improve with the passage of time." (Docket # 79). Dr. Knapp's report prompted the government to file the instant motion seeking Cline's commitment to the custody of the Attorney General for further evaluation and treatment.

This Court conducted an evidentiary hearing on the motion on January 29, 2008, at which Dr. Knapp testified. (Docket # 73). Dr. Knapp testified that, in his opinion, Cline suffers from chronic pain that interferes with his ability to understand court proceedings and to assist in his defense. (Docket # 74 at 9, 20). Dr. Knapp also opined that Cline's prognosis "will not change, and his inability to remember and understand will not change." (*Id.* at 10). Specifically, he explained his belief that Cline "lacks adequate insight and judgment to be able to properly choose among the different choices and options that will be presented to him by counsel." (*Id.* at 24).

At this stage, neither the government nor the defense contests the continued soundness of Dr. Horwitz's February 5, 2007 opinion that Cline lacks the necessary mental competence to stand trial. Nor do I, considering his reports and Dr. Knapp's testimony regarding Cline's cognitive disabilities. The issue in dispute is whether this Court <u>must</u> or, in the alternative, <u>should</u> commit Cline to the custody of the Attorney General to attempt what Dr. Knapp has opined will fail – restoring Cline to competence. The defense's position is that

commitment should not be ordered because it will serve no salutary purpose considering Cline's immutable cognitive impairments. (Docket # 81). The government's position is, quite simply, that the statute affords the court no choice but to order commitment. (Docket # 80).

Having carefully considered the statutory language, as well as the sparse caselaw on the issue, I agree with the government. The statute itself provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court <u>shall</u> commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility –
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

18 U.S.C. § 4241(d)(1) (emphasis added). Nothing in the plain language of the statute suggests that the court has the discretion to refuse to commit a defendant whom the court has found to be presently incompetent to the custody of the Attorney General for hospitalized evaluation and treatment.

Indeed, all of the courts that have addressed this issue have unanimously concluded that the statute is mandatory, even where the defendant's mental disease or defect appears permanent. *See, e.g., United States v. Ferro*, 321 F.3d 756, 761 (8th Cir.) ("we conclude that after determining that a defendant is incompetent to stand trial, a district court is required to commit the defendant to the custody of the Attorney General for a reasonable period of time to evaluate whether treatment would allow the trial to proceed"; rejecting the defendant's argument

4

that commitment is only authorized where defendant's condition is "treatable"), *cert. denied*, 540 U.S. 878 (2003); *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000) ("whatever the possible implicit exceptions, the statute certainly establishes a general rule of some breadth and does not appear to call for any case-by-case choice by the district court as to whether to incarcerate once the incompetency finding has been made"); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir.) ("[o]nce the district court decides that a defendant is incompetent to stand trial, it is appropriate that he be hospitalized for a careful determination of the likelihood of regaining mental capacity to stand trial"; the permanency of the defendant's condition is not to be determined until after the hospitalization), *cert. denied*, 497 U.S. 1005 (1990); *United States v. Shawar*, 865 F.2d 856, 861 (7th Cir. 1989) ("[o]ur reading of 18 U.S.C. § 4241(d) is not only that commitment is mandatory, but also that likelihood of recovery is not something to be considered by the district court in deciding whether to commit the defendant for the evaluation period"). The plain language of the statute persuades me that the above-cited cases have reached the correct determination.

In other words, I conclude that the statute affords the court no discretion in cases such as this one to deny the government's motion to commit the defendant for hospitalization by the Attorney General in a "suitable facility" to determine his likelihood of regaining competence to stand trial. Accordingly, I recommend that the district court find that Cline is presently incompetent to stand trial and order that he be committed to the custody of the Attorney General for a reasonable period, not to exceed four months, to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to

go forward." 18 U.S.C. § 4241(d)(1).  I further recommend that the Attorney General timely submit a report to the Court concerning its conclusions regarding Cline's competence.

Although the Court lacks discretion to deny the government's motion, it does not lack discretion to oversee his commitment in order to ensure that appropriate measures are taken to safeguard his health.  To that end, I recommend that the district court's order include the following requirements:

1. The defendant shall obtain his relevant medical records (those pertaining to current medical conditions and treatment) and provide them to government counsel within sixty (60) days;

2. Upon review of the defendant's records, the Attorney General shall designate a suitable facility for the defendant's hospitalization, as well as a licensed physician to oversee the defendant's medical treatment during the period of hospitalization;

3. The government shall provide such designations (facility and physician) to the Court and the defendant;

4. Prior to the defendant's hospitalization, the defendant's primary care physician shall be afforded the opportunity, if she believes it is prudent, to speak with such designated physician by telephone to discuss the defendant's medical conditions and care; and

5. The defendant shall be provided with a date and time for surrender to the designated facility.

## **CONCLUSION**

For the foregoing reasons, it is my recommendation that the government's motion to commit the defendant to the custody of the Attorney General pursuant to 18 U.S.C.

§ 4241(d)(1) **(Docket # 70)** be **GRANTED**.  I further recommend that the district court's order require the parties to comply with the measures set forth above in order to facilitate defendant's commitment.

                                        *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated:  Rochester, New York
       July  8 , 2008

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
         July   8  , 2008

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).